UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ROBERT HILL,                            :
                                        :
                  Plaintiff,            :
                                        :    15 Civ. 858 (DLC)
      -v-                               :
                                        :    OPINION AND ORDER
POLICE OFFICER MARIA CANDRES, POLICE    :
LIEUTENANT MICHAEL VITALO, POLICE       :
SERGEANT NICHOLAS MACCHIO, POLICE       :
OFFICER YRECK FONTAINE, and CITY OF NEW :
YORK,                                   :
                                        :
                  Defendants.           :
---------------------------------------- X

APPEARANCES:

For the plaintiff Robert Hill:
Anthony Albert Lenza, Jr.
Anabile & Erman, P.C.
1000 South Avenue
Staten Island, NY 10312

For the defendants:
Daniel Michael Braun
New York City Law Department
100 Church Street, Room 4-114
New York, NY 10007

DENISE COTE, District Judge:

     This action arises out of the arrest and prosecution of the

plaintiff Robert Hill ("Hill") on November 18, 2013, following

an altercation with his mother ("Mother").  The defendants move

for summary judgment.  For the following reasons, defendants'

motion is granted.

## Background

The following facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.  At the time of the events at issue, Hill was 46 years old, six feet tall, and weighed 230 pounds.  His Mother was 68 years old, confined to a wheelchair, and required the care of a home health aide for up to 12 hours each day.  Late on the night of November 17, 2013, Hill and his Mother had a physical altercation.  According to Hill, his Mother is mentally unstable and attacked him with a plunger.  Hill used force to defend himself from the attack.  In the early hours of November 18, officers from the housing police and the fire department responded to a call from Hill and transported Hill's Mother to Bellevue Hospital Center.

A social-services worker at Bellevue called the police to report that Hill's Mother claimed that Hill had assaulted her. When Sergeant Nicholas Macchio ("Macchio") and another, unidentified officer from the New York Police Department ("NYPD") arrived at Bellevue, Hill's Mother repeated her allegations, claiming that Hill had struck her with a plunger and covered her mouth with it.  Macchio investigated these allegations and did not arrest Plaintiff.  Officers Maria Candres ("Candres") and Yreck Fontaine ("Fontaine") arrived later, and they too investigated the allegations.

Candres was a domestic violence officer who knew Hill and his Mother from their interactions over several years.  Hill's Mother had previously accused Hill of domestic violence and had obtained a protective order against him in 2009.  Hill contends that the protective order was rescinded after his Mother admitted it was based on her own false statements.  Hill asserts that, during their prior interactions in response to domestic violence calls, Candres and Lieutenant Michael Vitalo had threatened to jail Hill.

Candres arrested Hill on November 18, 2013, charging him with second-degree assault, second-degree endangerment of a vulnerable elderly person with intent to cause injury, fourth-degree criminal possession of stolen credit cards, and criminal obstruction of breathing or blood circulation.  Hill's Mother was discharged from Bellevue on the evening of November 18.

A New York grand jury indicted Hill for second-degree assault, fourth-degree criminal possession of stolen property, and criminal obstruction of breathing or blood circulation.  The stolen-property charge related to ATM and food-stamp cards belonging to Hill's Mother that were found in Hill's possession during a search incident to his arrest.  Hill remained in custody until December 17, 2013.  The charges against him were dismissed on November 29, 2014.

Plaintiff commenced this action before the Honorable Analisa Torres on February 5, 2015.  He brings claims against the four individual defendants pursuant to 42 U.S.C. § 1983 for false arrest, malicious prosecution, abuse of process, failure to intervene, and deprivation of substantive due process rights, as well as state-law claims for false arrest, malicious prosecution, abuse of process, and intentional infliction of emotional distress.  He seeks to impose municipal liability against the City of New York (the "City") pursuant to § 1983 and state tort law.  On December 21, the defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  In support of their motion, they offered the transcript of a hearing held pursuant to New York General Municipal Law § 50-h; NYPD dispatch, complaint, and arrest reports; and the criminal complaint filed against Hill.  In opposition, Hill offered a call record from the Mental Health Association of New York City, a fire department prehospital care report, his Mother's Bellevue discharge report, and the certificate of disposition in his criminal case.  On September 20, 2016, pursuant to Rule 12(d), Judge Torres converted defendants' motion for judgment on the pleadings into a motion for summary judgment and permitted the parties to supplement their submissions.  Both parties filed additional briefing and statements of material facts pursuant to Local Rule 56.1; Hill

offered his own declaration, as well.[1]  The case was transferred to this Court on November 22.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Smith v. County of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (per curiam) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015), cert. denied, 136 S. Ct. 1684 (mem.).  If the moving party makes this initial showing, the burden then shifts to the opposing party to establish a genuine dispute of material fact. El-Nahal v. Yassky, 835 F.3d 248, 252, 256 (2d Cir. 2016).

---

[1] Discovery had been ongoing since 2015, as Judge Torres had denied the defendants' request to stay discovery and extended the period for fact discovery until after resolution of this motion.  In opposition to summary judgment, Hill does not identify any additional discovery that he needs to respond to the motion.

The party opposing summary judgment "may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Conclusory statements, conjecture, and speculation are insufficient to create a genuine factual dispute," Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 319 (2d Cir. 2008), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Hill's three principal federal-law claims -- and the analogous state-law claims -- are addressed first. They are claims for false arrest, malicious prosecution, and abuse of process. This Opinion then addresses the remainder of his federal and state-law claims.[2]

---

[2] Hill declined to respond to those parts of defendants' motion that were addressed to his claims for (1) deprivation of unspecified rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and (2) deprivation of rights under

I.   **False Arrest**

    To make out a claim for false arrest under both § 1983 and
New York law, a plaintiff must show that: "(1) the defendant
intended to confine [the plaintiff], (2) the plaintiff was
conscious of the confinement, (3) the plaintiff did not consent
to the confinement and (4) the confinement was not otherwise
privileged."  Ackerson v. City of White Plains, 702 F.3d 15, 19
(2d Cir. 2012) (per curiam) (citation omitted).  The existence
of probable cause for an arrest "is a complete defense to an
action for false arrest brought under New York law or § 1983."
Id. (citation omitted).

    "Probable cause to arrest exists when the officers have
. . . reasonably trustworthy information as to[] facts and
circumstances that are sufficient to warrant a person of
reasonable caution in the belief that an offense has been . . .
committed by the person to be arrested."  Id. (citation
omitted).  Probable cause exists if a law enforcement officer
receives information from a victim or eyewitness that warrants
arrest, "unless the circumstances raise doubt as to the person's

---

article 1, section 12 of the New York Constitution.  To the
extent such claims exist independently of the other, specific
rights Hill seeks to vindicate, he has abandoned them.  E.g.,
Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 143-
44 (2d Cir. 2016).  Defendants' motion for summary judgment is
granted with respect to these claims.

veracity." <u>Betts v. Shearman</u>, 751 F.3d 78, 82 (2d Cir. 2014)(citation omitted).

An arresting officer has no duty to investigate exculpatory defenses, or to assess the credibility of claims regarding exculpatory defenses.  Once a police officer is "aware of facts creating probable cause . . . [she] is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." <u>Garcia v. Does</u>, 779 F.3d 84, 93 (2d Cir. 2014) (citation omitted).  On the other hand, the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. <u>Jocks v. Tavernier</u>, 316 F.3d 128, 136 (2d Cir. 2003).  Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. <u>Id.</u> at 135.  Probable cause is not eliminated, however, by the mere existence of evidence that could permit a conclusion of innocence.  "[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.  Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." <u>Panetta v. Crowley</u>, 460 F.3d 388, 396 (2d Cir. 2006) (citation omitted).

On the morning of November 18, 2013, Hill's Mother was hospitalized after an altercation with Hill and told the hospital personnel and then the police that Hill had assaulted

her.  Hill admits that he did use force against his Mother,
although he claims he acted in self-defense.  The statements
made by Hill's Mother establish probable cause for Hill's
arrest.

Hill offers evidence that his Mother suffers from a
psychological disorder, and he asserts that the police were
aware of her condition.  He argues, therefore, that they had
reason to distrust his Mother's accusations against him.  Even
if Candres knew that Hill's Mother was suffering from a
psychological disorder, "knowledge of a victim witness's . . .
psychiatric history, alone, is not enough to destroy probable
cause."  Escalera v. Lunn, 361 F.3d 737, 746 (2d Cir. 2004).
Plaintiff and his Mother were known to Candres, and
notwithstanding the Mother's condition, Candres was entitled to
believe the Mother's version of events rather than plaintiff's.
See, e.g., Panetta, 460 F.3d at 395 (citation omitted) ("[A] tip
from a known informant whose reputation can be assessed and who
can be held responsible if her allegations turn out to be
fabricated is especially significant in establishing probable
cause.").

Moreover, Hill admits that he used force against his Mother
and that she reported this to Macchio and Candres.  Hill asserts
that at some point -- before or after the arrest -- he attempted
to inform Candres of his Mother's condition and to explain that

9

he was acting in self-defense.  Self-defense is an exculpatory defense under New York Law.  <u>Jocks</u>, 316 F.3d at 135.  But Hill's claims of self-defense, on their own, do not vitiate probable cause, and Candres was under no duty to investigate these claims further, even if she had been informed of them.  <u>See Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997).

Taking into account the facts and circumstances available to Candres at the time of the arrest, no reasonable jury could find that Candres lacked probable cause to arrest Hill. Defendants' motion for summary judgment is granted as to plaintiff's federal and state false-arrest claims.

## II.  Malicious Prosecution

To prevail on a claim for malicious prosecution under both § 1983 and New York law, a plaintiff must prove: (1) "the commencement or continuation of a criminal proceeding" against him, (2) the termination of the proceeding in his favor, (3) "that there was no probable cause for the proceeding," and (4) "that the proceeding was instituted with malice." <u>Mitchell v. City of New York</u>, 841 F.3d 72, 79 (2d Cir. 2016) (citation omitted).  A § 1983 claim additionally requires a showing of "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." <u>Id.</u> (citation omitted). "[T]he existence of probable cause is a complete defense to a

claim of malicious prosecution." Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013) (citation omitted). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Id. at 95. "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Id. (citation omitted). Moreover, "[p]olice officers do not generally 'commence or continue' criminal proceedings against defendants." Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015). There is an exception when police officers "play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Id. (citation omitted).

A grand jury's indictment "creates a presumption of probable cause," which "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Manganiello v. City of New York, 612 F.3d 149, 162 (2d Cir. 2010) (citation omitted). At trial, a plaintiff "bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." Savino v. City of New York, 331 F.3d 63, 73 (2d Cir. 2003).

Following Hill's arrest on November 18, 2013, a New York grand jury indicted him.  The criminal charges against Hill were dismissed roughly a year later.  There is no dispute that Hill has shown that a criminal prosecution was commenced against him and terminated in his favor.  For the reasons already explained, however, there was probable cause for Hill's prosecution.  Moreover, Hill has not shown any misconduct by the defendants that would undermine the presumption of probable cause created by the indictment.

Considering the unrebutted presumption of continuing probable cause arising from the grand jury's indictment, no reasonable jury could find in Hill's favor.  Defendants' motion for summary judgment is granted as to plaintiff's federal and state malicious-prosecution claims.

### III. Malicious Abuse of Process

For a claim of malicious abuse of process under both § 1983 and New York law, a plaintiff must establish that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Savino, 331 F.3d at 76.  To demonstrate the existence of a collateral objective, a plaintiff must show

that a defendant "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Id. at 78.

The plaintiff has offered no evidence that any defendant used the prosecution of Hill to obtain a collateral objective. Therefore, no reasonable jury could find in Hill's favor on these claims. Defendants' motion for summary judgment is granted as to plaintiff's federal and state abuse-of-process claims.

## IV. Remaining Federal Claims

As discussed above, no reasonable jury could find that Hill was unlawfully deprived of the constitutional rights he asserts. Given that there is no evidence of a constitutional violation, plaintiff's federal claims based on failure to intervene, substantive due process, and municipal liability also fail. See, e.g., Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (imposing failure-to-intervene liability only where a defendant "fails to intercede in . . . [a] constitutional violation"), cert. denied, 135 S. Ct. 1842 (2015) (mem.); Russo v. City of Bridgeport, 479 F.3d 196, 209 (2d Cir. 2007) (citation omitted) (holding that where "the Fourth Amendment provides a more explicit textual source of constitutional protection," a plaintiff cannot assert a substantive due process claim based on the same alleged deprivations); Smith v. Edwards, 175 F.3d 99, 107 (2d Cir. 1999) (granting summary judgment on municipal

liability where the plaintiff "suffered no constitutional
violation").  Defendants' motion for summary judgment is
therefore granted as to plaintiff's remaining federal claims.

## V.   Remaining State Claims

Plaintiff's claim for general negligence is not cognizable
under New York law:  "[A] plaintiff may not recover under
general negligence principles for a claim that law enforcement
officers failed to exercise the appropriate degree of care in
effecting an arrest or initiating a prosecution."  Bernard v.
United States, 25 F.3d 98, 102 (2d Cir. 1994).  His claims for
negligent screening, hiring, retention, training, and
supervision also fail.  To succeed on these claims, "a plaintiff
must show that the employee acted outside the scope of her
employment."  Velez v. City of New York, 730 F.3d 128, 136-37
(2d Cir. 2013) (citation omitted).  The parties agree that the
individual defendants were acting within the scope of their
employment; therefore, Hill cannot prevail as a matter of law.

Having dismissed all of the plaintiff's federal claims, the
Court declines to exercise supplemental jurisdiction over his
remaining state-law claim for intentional infliction of
emotional distress.  This claim rests on Hill's assertion that
Candres and Vitalo had threatened him on several occasions with
jail for abuse of his Mother.  See 28 U.S.C. § 1367(c)(3);
Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med.

<u>Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.</u>, 712 F.3d 705,
727 (2d Cir. 2013) (citation omitted) ("It is well to recall
that in the usual case in which all federal-law claims are
eliminated before trial, the balance of factors to be considered
under the pendent jurisdiction doctrine -- judicial economy,
convenience, fairness, and comity -- will point toward declining
to exercise jurisdiction over the remaining state-law claims.").
Accordingly, this claim is dismissed without prejudice to
renewal in state court.

### CONCLUSION

Defendants' December 21, 2015 motion for judgment on the
pleadings -- converted on September 20, 2016, into a motion for
summary judgment -- is granted with the following exception.
The claim for intentional infliction of emotional distress is
dismissed without prejudice to filing in state court.  The Clerk
of Court is directed to enter judgment for the defendants on the
remaining claims and close the case.

SO ORDERED.

Dated:  New York, New York
        December 14, 2016

_____
DENISE COTE
United States District Judge

15